C. V. Richards *vs.* American Realty Company.

American Realty Company *vs.* C. V. Richards.

Oxford.   Opinion April 24, 1920.

*"Cutting and yarding" defined. "Sluiced" wood. Abandonment.*

The decision of these cases involves the settlement of the accounts of certain logging operations undertaken by Mr. Richards for American Realty Company, under two contracts, one dated May 21, 1913, referred to as the cutting and yarding contract, the other dated September 5, 1913, referred to as the hauling contract.

*First Case.* The plaintiff began work under these contracts in the season of 1913-14; he worked under the first contract for five successive seasons; and under the second contract for four successive seasons; the hauling was taken over by the Realty Company in January, 1918.

Separating the items in the account annexed to the plaintiff's writ, and arranging them under the contracts to which they apply, we find that all work done under the hauling contract has been paid for in full; the transactions under that contract need, therefore, receive no further attention.

We find, also, that for work during the four seasons 1913-17 under the cutting and yarding contract, Mr. Richards was overpaid $821.66; all question, therefore, as to Mr. Richard's right to receive yearly the contract reserve accruing during those years is eliminated.

As to the cutting and yarding during the last season, 1917-18, we sustain plaintiff's contention that he should be credited with 2758.45 cords cut and yarded; we state the account thus:

| | | |
|---|---:|---:|
| 2758.45 cords, cut and yarded @ $5 | | $13,792.25 |
| Deduct advances agreed upon | | 6,294.91 |
| | | $7,497.34 |
| Deduct 50 cents per cord retained as per contracts of May 21, '13 and April 10, 1917 | $1,379.22 | |
| Overpayment | 821.66 | |
| | | 2,200.88 |
| Due Richards at close of season of 1917-18 | | $5,296.46 |

Other items are undisputed:

| | |
|---|---:|
| For use of equipment and camps | $300.00 |
| 15 tons of hay at $20 | 300.00 |
| 70 cords of boom logs @ $2.50 | 175.00 |
| Relocation of camps | 292.50 |
| For fixing road and building bridge | 300.00 |

As to the item for 276 boom logs, we find that the charge should be:

| | | |
|---|---:|---:|
| 26 logs at $1.50 | $ 39.00 | |
| 250 logs at $1.25 | 312.50 | |
| | | 351.50 |
| | | $1,719.00 |

$7,015.46

The charge for use of camps and equipment after May 1, 1918 cannot be sustained; if defendant did not return the camps and equipment seasonably under the contract shown, or did not return them in condition called for by the contract, the plaintiff has an appropriate remedy.

*Second Case.*  We state the account thus:

| | | |
|---|---:|---:|
| Loan made April 10, 1917 | | $4,069.85 |
| Credit from sale of horses | $1,106.70 | |
| Credit of 25 cents per cord under contract of April 10, 1917 | 689.61 | |
| Credit of 25 cents per cord under contract of May 21, 1913 | 689.61 | |
| | | 2,485.92 |

$1,583.93

The plaintiff's claim to retain the item of 25 cents per cord, the contract reserve, under the contract of May 21, 1913,—$689.61—is not sustained. We are satisfied that at some date after the close of the season of 1916-17 the American Realty Company decided to abandon operations on the lands of Barnjum Sandy River Company.

The defendant's contention that this action cannot be maintained to recover the loan of $4069.85 is not sustained; the loan, an advancement in fact, was payable on demand, and the defendant agreed, by way of further security, to apply 25 cents per cord towards payment.

On report.  Two actions of assumpsit, wherein C. V. Richards is plaintiff in the first case and American Realty Company is defendant, and American Realty Company is plaintiff in the second case and C. V. Richards is defendant, involving the settlement of the accounts of

certain logging operations undertaken by the said C. V. Richards for the said American Realty Company. In the first case, after the evidence had been completed, by agreement of parties, the cause was reported to the Law Court upon so much of the evidence as was admissible, the Law Court to render such final judgment therein as the legal rights of the parties require. At a subsequent term of court by agreement of parties in the second case, all the testimony and evidence in the first case which had been printed, so far as the same was pertinent and admissible, was considered as offered and admitted in the second case, and the case was reported to the Law Court, and argued together with the first case. The general issue with a brief statement was filed in each case. Judgment for the plaintiff in the first case for $7015.46, with interest on $5296.46 from June 1, 1918, and on $1719.00 from the date of the writ. Judgment for the plaintiff in the second case for $1583.93 with interest from date of the writ.

Case stated in the opinion.

*Pulsifer & Ludden, and Matthew McCarthy,* for plaintiff in first case.

*Weeks & Weeks, and White, Carter & Skelton,* for defendant in first case.

*Weeks & Weeks, and White, Carter & Skelton,* for plaintiff in second case.

*Pulsifer & Ludden, and Matthew McCarthy,* for defendant in second case.

SITTING: SPEAR, HANSON, PHILBROOK, MORRILL, WILSON, DEASY, JJ.

MORRILL, J. The decision of these cases involves the settlement of the accounts of certain logging operations undertaken by Mr. Richards for American Realty Company.

In March, 1913, American Realty Company acquired the right to log upon certain lots in Sandy River Plantation in this State, owned by Barnjum Sandy River Company, undertaking to cut from 15,000 to 30,000 cords annually; on May 21, 1913, C. V. Richards, the plaintiff in the first action, contracted with American Realty Company to cut and yard, from a part of the territory held by the latter company under its permit from Barnjum Sandy River Company, "3000 cords or more of timber, spruce and fir, per year until the valley is cleared;" the contract price was five dollars per cord, settle-

ments to be made monthly; twenty-five cents per cord, called by counsel the contract reserve, was to be retained by American Realty Company and paid to Mr. Richards, when the contract should be wholly performed and the valley cleared.

On the fifth day of September, 1913, Mr. Richards made a second contract with American Realty Company to haul and land at Rangeley Lake or in Saddleback Brook the wood which he was to cut under his contract of May 21, 1913 for $2.50 per cord.

The transactions of the parties under these contracts are the subject matter of these actions. The claims upon which the second suit is based, might with advantage have been filed in set-off in the first suit; the defendant in that suit did not see fit to do so, and we therefore consider the cases as presented.

*First Case.* The plaintiff began work under the contracts referred to in the season of 1913-14; he worked under the contract of May 21, 1913, called by the parties the cutting and yarding contract, for five successive seasons; and under the contract of September 5, 1913, for four successive seasons; the hauling was taken over by the Realty Company in January, 1918.

Separating the items in the account annexed to the plaintiff's writ, and arranging them under the contracts to which they apply, we find that during the four seasons, 1913-17, Mr. Richards hauled under the contract of September 5, 1913, 21,618.07 cords for which he was entitled to receive, at $2.50 per cord, $54,045.18; and that he did receive under that contract, $54,045.18; the transactions under the hauling contract need, therefore, receive no further attention.

We also find that during the four seasons, 1913-17, Mr. Richards cut and yarded under the contract of May 21, 1913, 21,627.08 cords for which he was entitled to receive at five dollars per cord ($4.75, payable on the 20th of each month, and 25 cents to be reserved), $108,135.39, and that he did receive during those seasons, under that contract $108,957.05; these figures are not disputed, and it therefore appears that at the close of the season of 1916-17, Mr. Richards had been overpaid $821.66. All question, therefore, as to Mr. Richards' right to receive yearly the contract reserve accruing during those years is eliminated; the Realty Company had withheld the 25 cents per cord during the first two seasons, but during the two following seasons had not withheld the contract reserve and had advanced to Mr. Richards all that had been withheld during the first two seasons

and \$821.66 in addition thereto. Mr. Richards' counsel contends that credit for about 1500 cords cut in 1916-17 was wrongfully withheld; but this wood was not yarded that season, but was carried over and included in the minimum cut of 1917-18, as accepted January 21, 1918.

The first substantial difference between the parties relates to cutting and yarding during the season of 1917-18. The plaintiff claims that he should be credited with 2758.45 cords cut and yarded; the defendant claims that only 2257.73 cords were cut and yarded, and 500.72 cords were cut and left at the stump for which it gives credit at \$2.50 per cord. We think that the plaintiff has sustained his contention. He says that this 500.72 cords was not wood at the stump, i. e. cut and piled at the stump; but was "sluiced" wood, i. e. wood thrown down, slid down, or carried down from the more inaccessible places, and piled where it could be hauled with two sleds. That his version is probably correct is shown by the fact that this 500.72 cords was scaled and included in the amount accepted as the minimum cut for that season; and Mr. Crowell, the defendant's superintendent, says that the wood cut and yarded was scaled at the yard. If it was piled where it was reasonably accessible to be hauled with two sleds, the contract was met. For the season of 1917-18 we have, therefore,

| | | |
|---|---|---|
| 2758.45 cords, cut and yarded @ \$5.............. | | \$13,792.25 |
| Deduct advances agreed upon........................ | | 6,294.91 |
| | | \$7,497.34 |
| Deduct 50 cents per cord retained as per contracts of May 21-13 and April 10, 1917...... | \$1,379.22 | |
| Over payment. ............................................... | 821.66 | |
| | | 2,200.88 |
| Due Richards at close of season of 1917-18.... | | \$5,296.46 |

Other items are undisputed:

| | |
|---|---|
| For use of equipment and camps......... . ........ | \$300.00 |
| 15 tons of hay @ \$20. ..................... .................. | 300.00 |
| 70 cords of boom logs @ \$2.50........................ | 175.00 |
| Relocation of camps... ..... ........... ..................... | 292.50 |
| For fixing road and building bridge................ | 300.00 |

As to the item for 276 boom logs we
    think that defendant's position is
    sound and that the charge should be:

| | | |
|---|---|---|
| 26 logs at $1.50 | $ 39.00 | |
| 250 logs at $1.25 | 312.50 | |
| | ———— | 351.50 |
| | | ———— 1,719.00 |
| | | $7,015.46 |

The item of $47 for hiring men is not supported by the evidence; the last item for use of camps and equipment after May 1, 1918, cannot be sustained; if defendant did not return the camps and equipment seasonably under the contract shown by the letter of January 21, 1918, or did not return them in condition called for by the contract, the plaintiff has an appropriate remedy.

As to interest: The plaintiff claims interest upon the amount due under the contract, $5296.46, from June 1, 1918. By the contract payments were to be made monthly; that method seems not to have been adhered to, and evidence is not presented from which the monthly instalments can be determined. The season for cutting and yarding had closed, and the amount of the cut had been accepted January 21, 1918; any payment due for cutting and yarding during the season of 1917-18 had been long overdue on June 1, 1918.

The entry in the first case will be,

> *Judgment for the plaintiff for $7015.46*
> *with interest on $5296.46 from June*
> *1, 1918, and on $1719.00 from the*
> *date of the writ.*

*Second Case.* On April 10, 1917, Mr. Richards borrowed of American Realty Company $4069.85, and as security transferred to the company four certain Holmes notes; he also made an agreement of that date, that 25 cents per cord should be deducted and retained under his contract of May 21, 1913; "said 25 cents per cord above stated to be in excess of the 25 cents per cord which is already held back according to the terms of the original contract, making the total amount to be held back 50 cents per cord, until said $4069.85 is wholly paid "

It is agreed that $1106.70 is a correct credit, realized from the sale of certain horses pledged for payment of the collateral.

Mr. Richards testifies that this loan was without interest; and plaintiff's counsel frankly admits that the charges of interest in the writ "are improper charges" on the part of his client.

The account then stands:

| | | |
|---|---|---|
| Loan | $4,069.85 | |
| Credit from sale of horses | 1,106.70 | |
| Credit of 25 cents per cord under contract of April 10, 1917 | 689.61 | |
| Credit of 25 cents per cord under contract of May 21, 1913 | 689.61 | |
| | | 2,485.92 |
| | | $1,583.93 |

The plaintiff claims to retain the item of 25 cents per cord, the "contract reserve" under the contract of May 21, 1913,—$689.61—, upon the ground that defendant abandoned his contract; this contention is based largely upon Mr. Richards' letter of January 11, 1918; but the reference in that letter to the contract of May 21, 1913, is explained by Mr. Richards as a mistake; that the intended reference was to the hauling contract of September 5, 1913. We think the context of the letter, considered in the light of the action of the parties taken ten days later, as shown by the letter of January 21, 1918, sustains the explanation. The alleged obligation of the Realty Company "to fix the road seasonably" is found in the hauling contract.

We are satisfied that at some date after the close of the season of 1916-17 the American Realty Company decided to abandon operations on the lands of Barnjum Sandy River Company; it cut no timber on those lands the following season except about 1200 cords cut by Mr. Richards under his contract; the required yearly cut under that contract was only one-fifth of the minimum yearly cut under the larger permit. Mr. Richards was justified, from his knowledge of the situation, in understanding that the Barnjum Sandy River Company's permit was abandoned. The attitude of the officers of American Realty Company, at the meeting of December 13, 1918, lacked that business-like frankness, which was to be expected

of them in dealing with one of their contractors; they gave Mr. Richards no intimation as to their plans for future operations on those lands. We think that they should apply the "contract reserve" on the cutting and yarding of 1917-18, towards payment of the loan, as we have done.

The defendant contends that this action cannot be maintained to recover the loan of $4069.85; that plaintiff had agreed to accept payment at 25 cents per cord on wood cut and yarded. We do not so construe the agreement of April 10, 1917; the loan, and advancement in fact, was payable on demand, and the defendant agreed, by way of further security, to apply 25 cents per cord towards payment.

In the second case the entry will be,

*Judgment for the plaintiff for $1583.93*
*with interest from date of the writ.*